(No. 34320.—

K. AND R. DELIVERY, INC., Plaintiff in Error, *vs.* INDUSTRIAL COMMISSION *et al.*—(ARCHIE GRANT CHANEY, Defendant in Error.)

*Opinion filed May 23, 1957.*

KIRKLAND, FLEMING, GREEN, MARTIN & ELLIS, of Chicago, (DAVID JACKER, JAMES A. SULLIVAN, W. H. SYMMES, and ROBERT KLUGMAN, of counsel,) for plaintiff in error.

PORCELLI and POLALES, of Chicago, for defendant in error.

Mr. JUSTICE DAILY delivered the opinion of the court:

This is a proceeding brought under the Illinois Workmen's Compensation Act (Ill. Rev. Stat. 1955, chap. 48, pars. 138.1 *et seq.*) by the respondent, Archie Grant Chaney, to recover compensation for the loss of an eye which occurred in the course of his employment with the petitioner, K. and R. Delivery, Inc. At a hearing conducted by the arbitrator on January 28, 1955, it was found that Chaney was entitled to receive 140 weeks compensation at the rate of $27.20 per week, this being based upon an annual wage of $1414.40. A petition for review was then filed by the employee, and after subsequent hearing an order was entered by the Industrial Commission reversing the arbitrator's decision and awarding compensation for 140 weeks at the maximum rate of $34.00 a week. Upon *certiorari* the superior court of Cook County affirmed the award of the Industrial Commission. Writ of error has now been allowed by this court.

The record indicates that K. and R. Delivery, Inc., is a trucking concern which operates some 50 trucks in doing general hauling within the Chicago area. The firm regularly employs its own drivers and operates five days a week, although during the slack summer season as many as 20 of its trucks may be idle on a particular day. Customarily, the company delivers all types of merchandise and does

not provide its driver with a helper. However, prior to date of respondent's injury, the company received a contract to deliver home freezers, and because of their bulkiness it was necessary to dispatch at least one helper with each vehicle to assist the driver in making such deliveries. As the company president testified, "The delivery of freezers to the home was a specialized field and that was why we needed help on the trucks. It was a special situation in which we were involved only temporarily."

Archie Chaney was one of those individuals who were employed to help the drivers with the freezer hauling. He was regularly employed by the city of Chicago as a fireman and worked for the delivery company only on his off-days. While delivering and uncrating merchandise for the petitioner on June 9, 1953, a piece of wood struck him in the left eye resulting in permanent loss of sight therein. At the subsequent hearing Chaney testified that he commenced working for K. and R. Delivery, Inc., in March, 1953, and although he usually worked two days one week and three days the next, he was not obligated to do so but could work at his "own discretion." In fact, the witness stated that there were several weeks before his injury in which he did not work at all for the company. He went on to say that all truck helpers employed by petitioner were part-time workers and that some of them were also regularly employed as city firemen.

The company president, David Gerstein, did not deny that Chaney was free to work as he saw fit. However, he did insist that respondent commenced working for the company just seven days before the accident, and along with two or three other city firemen who were also so employed, worked an average of 16 hours a week at the rate of $1.70 per hour. Nevertheless, on cross-examination, the witness admitted that the company records were incomplete and that Chaney "may have worked" for the peti-

tioner prior to June, 1953. It was agreed that when employed by the petitioner, Chaney put in a full eight-hour day.

There is no dispute as to the manner in which the respondent was injured, his eligibility for benefits, or the number of weeks' compensation to which he is entitled. The sole question pertains to the weekly amounts which he should receive.

The solution to this problem may be found in section 10 of the Workmen's Compensation Act (Ill. Rev. Stat. 1955, chap. 48, par. 138.10) which provides the basis for computing the employee's probable annual earnings. Once these annual earnings are so determined, the weekly rate of compensation can be ascertained by dividing the per annum amount by 52 (Ill. Rev. Stat. 1955, chap. 48, par. 138.10(i),) provided that in no event shall this weekly rate exceed the statutory limits of $34 per week. (Ill. Rev. Stat. 1955, chap. 48, par. 138.8(h).) Section 10 reads as follows: "(a) The compensation shall be computed on the basis of the annual earnings which the injured person received as salary, wages or earnings if in the employment of the same employer continuously during the year next preceding the injury. * * * (c) If the injured person has not been engaged in the employment of the same employer for the full year immediately preceding the accident, the compensation shall be computed according to the annual earnings which persons of the same class in the same employment and same location, (or if that be impracticable, of neighboring employments of the same kind) have earned during such period. (d) As to employees in employments in which it is the custom to operate throughout the working days of the year, the annual earnings, if not otherwise determinable, shall be regarded as 300 times the average daily earnings in such computation. (e) As to employees in employments in which it is the custom to operate for a part of the whole number of working days

in each year, such number, if the annual earnings are not otherwise determinable, shall be used instead of 300 as a basis for computing the annual earnings, provided the minimum number of days which shall be so used for the basis of the year's work shall be not less than 200."

The company contends the arbitrator was correct in applying section 10(c) so as to arrive at an amount which was consistent with the part-time employee's actual earnings. On the other hand, the respondent argues that the actual earnings are not determinable and that either section 10(d) or 10(e) must be used.

In construing the provisions of the Workmen's Compensation Act all portions thereof must be read as a whole and in such a manner as to give them the practical and liberal interpretation which was intended by the legislature. (*American Steel and Wire Co. of New Jersey* v. *Industrial Com.* 411 Ill. 354; *Illinois Zinc Company* v. *Industrial Com.* 366 Ill. 480; *Scholl* v. *Industrial Com.* 366 Ill. 588; *Raymond* v. *Industrial Com.* 354 Ill. 586.) After doing so, it is quite clear that section 10(a) is inapplicable to the present case since the respondent was not continuously employed by K. and R. Delivery, Inc., for a full year immediately preceding the accident. We believe the same reasoning applies to section 10(c). The petitioner would have us believe that all city firemen who worked part-time for the company constituted a class and that their average earnings must now be used as the basis for compensation even though there was no evidence to show that such persons had been so employed for the preceding year. The "class" with which we are here concerned was part-time delivery helpers. Although there was testimony which indicated that persons other than city firemen were also employed in this capacity, no evidence whatsoever was offered to show their average wage. Furthermore, section 10(c) states that "compensation shall be computed according to the annual earnings which persons of the same class * * *

*have earned during such period."* (Emphasis supplied.)
Obviously, the words "during such period" refer to the
only period mentioned in the paragraph, namely, the full
year immediately preceding the accident. This being the
case there was no evidence of the full-year class earnings
so as to justify a computation based upon section 10(c).

It is our opinion that the present employment was of
such a nature as to warrant the sole application of section
10(e). Here, there was no regular contract of employ-
ment existing between petitioner and respondent. Rather,
Chaney's uncontradicted testimony indicated that he was
under no obligation to work for the delivery company in
his spare time but that such was entirely within his discre-
tion. Although petitioner was regularly engaged in the
general trucking business, the delivery of freezers and
hiring of truck helpers was a special, temporary type of
service which depended entirely upon part-time workers.
Insofar as these part-time workers were concerned, their's
was not an employment in which it was the custom to
operate throughout the working days of the year, but an
employment for only a part of the whole number of work-
ing days in each year. Since the probable annual earnings
were not otherwise determinable, the minimum of 200 days
must be used for this computation. As was held in *Ruda*
v. *Industrial Board,* 283 Ill. 550, section 10(e) was in-
tended to cover just such a situation—that is, the ascer-
taining of a basis where the working days are intermittent.
A similar set of facts was presented in *Stellwagen* v. *Indus-
trial Com.* 359 Ill. 557, where the claimant, who was regu-
larly employed by the city of Chicago as a street sweeper,
was injured while performing part-time work for the plain-
tiff in error. In commenting upon these particular statutory
provisions the court said: "The employment of defendant
in error was such that it would customarily engage him
only a part of the whole number of working days, depend-
ing upon the weather and circumstances. In such case

section 10e applies * * *." Similar language was contained in the case of *Mielke* v. *Industrial Com.* 379 Ill. 462.

We hold that the lower court did not err in affirming the Industrial Commission's award of the maximum weekly compensation benefits for the statutory period.

For the reasons stated, the judgment of the superior court of Cook County is therefore affirmed.

*Judgment affirmed.*