Junetta ALLEN, Respondent,

v.

DOROTHY'S LAUNDRY AND DRY CLEANING COMPANY, Employer,

and

Miller's Mutual Insurance Agency of Illinois, Insurer, Appellants.

No. KCD 27279.

Missouri Court of Appeals,
Kansas City District.

May 5, 1975.

Motion for Rehearing and/or Transfer Denied June 2, 1975.

Application to Transfer Denied July 14, 1975.

John C. Russell, Raytown, for appellants.

John C. Milholland, A. J. Anderson, Harrisonville, for respondent.

Before SWOFFORD, P. J., and ROBERT R. WELBORN and ANDREW J. HIGGINS, Special Judges.

ROBERT R. WELBORN, Special Judge.

Workmen's Compensation proceeding. Referee of Division of Workmen's Compensation denied claim for death benefit. Industrial Commission affirmed ruling of referee. Circuit court reversed and ordered allowance of claim. Employer and insurer appeal.

The decisive facts are set out in the findings of the referee, as follows:

"I find from the evidence that on April 21, 1972 [Orville T. Allen] was shot by a berserk rifleman on the streets of Harrisonville, Missouri, and that as a result of such shooting the employee died on April 24, 1972. At the time of the shooting the deceased was in the process of delivering laundry to Capitol Cleaners, a laundry and dry cleaning establishment located just off of the square in Harrisonville. Just prior to the shooting of the employee, the rifleman had shot and killed two Harrisonville policemen and subsequently shot and wounded the sheriff of Cass County. For a period of several months prior to April 21, 1972 the square in Harrisonville had been frequented by groups of young people described as 'hippies' who on occasion blocked traffic on the streets around the square, directed profane language at citizens around the square and engaged in other breaches of the peace. However, there were no incidents involving the use of guns prior to the shooting on April 21, 1972. The killers' (sic) motive is obscure, but the evidence would tend to indicate that he was a radical protestor of some sort rebellious against society in general.

"The first issue for decision is whether the deceased Orville T. Allen, was an employee of the alleged employer, Dorothy's Laundry and Dry Cleaning Company, while engaged in delivering laundry pursuant to an arrangement for such delivery between the alleged employer and Capitol Cleaners. [The affirmative finding on this issue is not controverted. The basis of the finding is, therefore, omitted.]

"The second issue for decision is whether the employee sustained an accident arising out of his employment. The claimant [widow of employee] contends that the case is compensable under the so-called 'street risk doctrine' and/or the 'assault doctrine', and under the latter more particularly since the 1969 amendment of Sec. 287.120 RSMo 1969 [V.A.M.S.] defining the term 'accident' to include 'injury or death of the employee caused by the unprovoked violence or assault against the employee by any person.'

"The 'positional risk theory' which makes an accident compensable if claimant's employment caused him to be at the place where it happened has not been accepted or followed in Missouri. Liebman v. Colonial Baking Company, [Mo.App.] 391 S.W.2nd, 948. Likewise, the Liebman case is authority for the proposition that the risk of assault is not a hazard of the street within the meaning of the 'street risk doctrine.' I find, therefore, that claimant cannot recover on either the 'positional risk theory' or 'street risk doctrine' upon the facts presented.

"With respect to the 'assault doctrine' I find that the case at hand is one of 'neutral origin', meaning that the assault was not attributable to the employment on any more rational basis than that the employment offered convenient occasion for the attack to take place. Such an assault has not been heretofore held compensable in

Missouri. Liebman v. Colonial Baking Company, 391 S.W.2nd, 948.

"I find that the assault upon the employee was unprovoked and accordingly conclude that he sustained an 'accident' as that term is contemplated by Section 287.020–2 and Section 287.120–1 as amended, RSMo 1969, [V.A.M.S.]. However, I further find such accident did not arise out of the employment. If it was the intention of the legislature to change the law which heretofore made situations like those found in the Liebman case and Kelley v. Sohio Chemical Company, [Mo.] 392 S.W.2nd, 255 not compensable, the term 'accident' used in the amendment, should have been expanded to read 'accident arising out of and in the course of the employment.' "

The circuit court disagreed with the referee's conclusion as to the meaning and effect of § 287.120, subd. 1, RSMo 1969, V.A.M.S., and concluded that the 1969 amendment, referred to by the referee, made an unprovoked assault in the course of employment a compensable accident. This was a conclusion of law and appellants' contention that the circuit court's action was a prohibited substitution of its conclusion for a factual finding of the referee is without merit. § 287.490, subd. 1, RSMo 1969, V.A.M.S.

The language of § 287.120, subd. 1, referred to by the referee and the matter at the crux of the issue here presented, is the last sentence of the subparagraph, which in its entirety reads:

"If both employer and employee have elected to accept the provisions of this chapter, the employer shall be liable, irrespective of negligence, to furnish compensation under the provisions of this chapter for personal injury or death of the employee by accident arising out of and in the course of his employment, and shall be released from all other liability therefor whatsoever, whether to the employee or any other person. The term 'accident' as used in this section shall include, but not be limited to,

injury or death of the employee caused by the unprovoked violence or assault against the employee by any person."

The last sentence was added by the General Assembly in 1969. Laws of Mo. 1969, p. 390. The amending legislation made this sole change. In attempting to arrive at the proper meaning and effect of the change, a look at the law as it stood at the time is in order.

In Liebman v. Colonial Baking Company, 391 S.W.2d 948 (Mo.App.1965), the law of this state regarding the compensability of injury resulting from assault upon a workman is well summarized (391 S.W.2d 951–952):

"The assault doctrine has been fully developed in Missouri. It is possible to illustrate its scope and method by examples remarkably free of the contradictions that have attended its use in some other jurisdictions. Assaults divide conveniently into three classes. Larson's Workmen's Compensation Law, Sec. 7, p. 48 et seq.; Sec. 11, p. 131 et seq.; Kelly [Kelley] v. Sohio Chemical Co., Mo.App., 383 S.W.2d 146, 147.

"1st: Those which are invited by the dangerous nature of the employee's duties, or by the dangerous environment in which he is required to perform them, or are the outgrowth of frictions generated by the work itself, but which, in either event, are invariably revealed to be the result of some risk directly attributable to the employment. Injuries resulting from assaults of that character are compensable in Missouri. * * *

"2nd: Those committed in the course of private quarrels that are purely personal to the participants. Injuries resulting from assaults of that character are non-compensable in Missouri. * * *

"3rd: Irrational, unexplained or accidental assaults of so-called 'neutral' origin, which, although they occur 'in the course of' the victim's employment, cannot be attributed to it on any more rational basis than

that the employment afforded a convenient occasion for the attack to take place. In some jurisdictions that circumstance is regarded as a sufficient reason for awarding compensation; but not in Missouri. * *

"In every Missouri case involving an assault of 'neutral' origin compensation has been denied. The rationale in each, insofar as it is pertinent to the issue before us, has been that the risk of unprovoked assault is no more logically attributable to one man's employment than to another's unemployment, and that the mere fact that the employment provided a convenient opportunity for the assault to take place, as by bringing the victim and his assailant together at the point where it occurred, is insufficient to establish any causal connection between the employment and the injury, or to show that the latter was a rational consequence of the former."

A short time later, the assault doctrine was before the Supreme Court en banc in Kelley v. Sohio Chemical Company, 392 S.W.2d 255 (1965). In that case, employee, alone in the office of her employer, heard footsteps and when she turned was struck in the head. She was found unconscious sometime later. The employee did not know the assailant. Nothing had been disturbed in the office. In affirming the denial of compensation the court held that the claimant had failed to sustain her burden "to show some direct causal connection between the injury and the employment." 392 S.W.2d 257. Two judges dissented in Kelley. They would have applied the rule that "when an employee charged with the performance of a duty is found injured at a place where his duty required him to be, a presumption arises that he was injured in the course of and in consequence of his employment; * * *." 392 S.W.2d 259.

Appellants' first contention here is that the 1969 amendment did not alter the requirement of the remainder of the section that the assault arise out of and in the course of the employment. Without conceding that it in fact does so, appellants alternatively advance the suggestion that the amendment might in effect provide a statutory basis for the presumption which the dissenters sought to apply in Kelley, but still permit a rebuttal of the presumption by evidence showing that the assault did not arise out of the employment. They contend that there was evidence here which explained the assault so that the referee was authorized to conclude as he did that the injury was not the result of an accident in the course of employment.

The respondent predicates the 1969 amendment upon a perceived necessity to change the law as applied in Kelley. She contends that the legislature by the amendment intended to and did make "unprovoked assaults" compensable accidents. Her contention is that the meaning and effect of the amendment is the same as it would have been had the legislature provided: "The term 'accident arising out of and in the course of his employment' shall include, but not be limited to, injury or death of the employee caused by the unprovoked violence or assault against the employee by any person."

As a starting point for the resolution of the problem presented, it must be presumed that the legislature, by the 1969 amendment, intended to change or clarify the existing law. "In the construction of statutes, the courts start with the assumption that the legislature intended to enact an effective law, and the legislature is not to be presumed to have done a vain thing in the enactment of a statute." 73 Am.Jur.2d, Statutes, § 249, p. 422 (1974). The difficulty here arises because the change was attempted to be made by addition of a statutory definition of the term "accident" as used in § 287.120. The term "accident" is elsewhere defined in § 287.020, subd. 2. That is the definition which has given rise to the problem presented by cases such as the "abnormal strain" situations. See Carroll, "Present Concept of Accident under Missouri Workmen's Compensation Law,"

21 Mo.Bar Journal 208 (1965). The assault cases actually presented no problem under § 287.020, subd. 2, because the injury resulting from an assault was not questioned as having been the result of an "accident."

The problem with assaults was not whether the incident was an accident, but whether it was an accident "arising out of and in the course of his employment" under § 287.120. The analysis of the assault cases in Liebman, supra, clearly shows the problem which those cases presented. However, if appellants' primary analysis of the effect of the 1969 amendment is to be accepted, the effect of the amendment would be to have written into § 287.120 a superfluous definition of the term "accident," while retaining the requirement that the assault arise out of and in the course of employment. To adopt such a construction would convict the General Assembly of having enacted a meaningless piece of legislation, a result to be avoided if any other logical, rational construction of the amendatory legislation is permissible.

Appellants' alternative suggestion that the amendment was intended to apply only to "unexplained" assaults, such as in the Kelley case, would require the insertion of that limitation in the amendatory langage, which is directed only at "unprovoked" assaults.

Turning to respondent's construction of the statute, she relies on the presumption that the amendment was designed to have some meaning and effect. She also points to § 1.010, RSMo 1969, V.A.M.S., calling for the liberal construction of acts of the General Assembly "so as to effectuate the true intent and meaning thereof." Although not mentioned by respondent, note also is to be taken of § 287.800, a legislative declaration applicable expressly to the Workmen's Compensation Law, calling for its liberal construction "with a view to the public welfare * * *." Respondent argues that the legislature clearly intended to bring injury or death resulting from an unprovoked assault within the coverage of the Workmen's Compensation Act, and that the legislature accomplished this purpose by making the definition of "accident" applicable to the term "as used in this section," inasmuch as the term is used in § 287.120 to describe only "compensable accident." She concludes that since the term "accident" in § 287.120 is used in connection with the language "arising out of and in the course of his employment" the meaning of the amendment is the same as if it actually read: "The term 'accident arising out of and in the course of his employment' shall include, but not be limited to, injury or death of the employee caused by the unprovoked violence or assault against the employee by any person."

Acceptance of this construction is difficult, however, inasmuch as it would eliminate both the requirement that the assault occurred in the course of employment and that it arise out of the employment. Inasmuch as the problem in assault claims arises with respect to the latter requirement, there would appear to have been no reason for the elimination of the first requirement, which was found to have been met in this case.

Although the language of the 1969 amendment leaves considerable to be desired, considering the problem which the amendment appears to have been intended to solve, the requirement that effect be given the amendment, if at all possible, the requirement of liberal construction of the law, and the oft-stated principle that doubts in the construction of the Workmen's Compensation Law are to be resolved in favor of the employee (Henderson v. National Bearing Division, 267 S.W.2d 349, 353[4] (Mo.App.1954); Baer v. City of Brookfield, 366 S.W.2d 469, 471[6] (Mo.App.1963); Todd v. Goostree, 493 S.W.2d 411, 416[1–6] (Mo. App.1973)), the trial court properly construed the amendment to eliminate in this case of a "neutral" unprovoked assault which arose in the course of employment, the necessity for an affirmative showing

that the assault arose out of the employment. The 1969 amendment to § 287.120, in defining "accident" to include an unprovoked assault supplies that requirement for a compensable claim in a case such as this. Therefore, the trial court correctly rejected the holding of the referee and the Industrial Commission that the 1969 amendment did not have such effect.

Judgment affirmed.

All concur.